Filed 7/22/26  Ellis v. Perris Union High School Dist. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| CHERYL ELLIS, | D088027 |
| Plaintiff and Appellant, | (Super. Ct. No. RIC2001802) |
| v. | |
| PERRIS UNION HIGH SCHOOL DISTRICT, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Riverside County, Christopher Harmon, Judge.  Affirmed.

Zulu Ali and Law Office of Zulu Ali & Associates for Plaintiff and Appellant.

Dennis J. Walsh and Walsh & Associates, Daniel P. Barer, Emily Vida and Pollak, Vida & Barer for Defendant and Respondent.

INTRODUCTION

Cheryl Ellis appeals the summary judgment entered in favor of Perris Union High School District (District) on her claims that the District unlawfully terminated her employment based on age, race, and/or gender discrimination, retaliation, and harassment in violation of California's Fair

Employment and Housing Act (Gov. Code, § 12900 et seq).  Ellis did not oppose the motion for summary judgment.  She contends, however, the District did not meet its burden to negate her claims or to establish a legitimate nondiscriminatory reason for its adverse actions.  At oral argument, Ellis effectively conceded the District met its burden as to the discrimination and retaliation claims, but argued the District did not meet its burden as to the harassment claim.  Based on our independent review of the record, we conclude the District met its burden to negate each of Ellis's claims.  We, therefore, affirm the judgment.

## BACKGROUND

We take the facts from the undisputed evidence presented to the trial court on the motion for summary judgment.  (*Gonzalez v. Mathis* (2021) 12 Cal.5th 29, 39.)  We consider the evidence de novo, viewing it in the light most favorable to the losing party.  (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 620 (*Bailey*).)

### I.

### *Ellis's Layoff*

Ellis worked for the District as an English teacher at an alternative public school for nine years before she voluntarily resigned her position effective January 2015.

A couple of years later, in 2017, she applied for a position teaching English at California Military Institute (CMI), a charter school within the District.

CMI offered Ellis employment for the 2017–2018 school year as an English Learner Instructional Coach/Teacher.  This was a new position at CMI for the 2017–2018 school year.  She accepted the position on July 31, 2017 and began her employment on August 3, 2017.

2

In December 2017, a CMI assistant principal evaluated Ellis's performance and stated she "exemplified the standard" in each area evaluated. He commended Ellis for consistently engaging students "in discussions that prompt critical thinking, constructive written responses, and performance tasks." He also said she facilitated "great classes," and worked well with colleagues as an instructional coach. He recommended continued employment with CMI.

Several months later, in March 2018, the District and CMI personnel participated in an annual review of CMI's budget. Because CMI would have a budget deficit for the upcoming school year, the committee recommended reductions for both the remainder of the current school year and for the 2018–2019 school year. The recommendations included eliminating three teaching positions.

Two CMI teachers tendered voluntary resignations. But CMI still needed to lay off one additional certificated teaching position to close the budget gap. Because the English Learner Instructional Coach/Teacher position was a newly created position for the 2017–2018 school year, the committee agreed that eliminating this position would not directly impact instructional services provided to CMI students.

A collective bargaining agreement with the CMI teacher's association allowed CMI to lay off teachers for "lack of work, lack of funds or other legitimate reasons" and provided that members should be selected for layoff "based on a combination of factors, including performance, skills, seniority and [CMI]'s needs."

Ellis and another similarly qualified teacher started work with CMI on the same date. However, the other teacher was considered more senior for purposes of layoff because the other teacher accepted an employment offer

3

several months before Ellis accepted her offer. The school principal informed Ellis in March 2018 that the school needed to lay her off.

In May 2018, the assistant district superintendent, who participated in the budget meeting, submitted a recommended resolution to the CMI Board of Trustees (Board) to eliminate three teaching positions and to lay off one employee, Ellis. The recommendation, made in consultation with the CMI principal and the district superintendent, was made to support CMI's financial health and to close a budget gap.

The Board considered the resolution which stated CMI needed to eliminate three certificated positions to close a funding gap. CMI stated it would not fill vacancies created by staff resignations in two certificated positions. The Board approved the layoff recommendation, with one member abstaining. CMI sent Ellis a written notice of layoff attaching the resolution.

II.

*Ellis's Subsequent Applications for New Employment with the District*

Between March and September 2018, Ellis applied for three positions with the District. She applied to teach history at a middle school. She was not selected to interview for the position because she did not possess the required single subject social science credential from California. The District was unable to verify that she applied to transfer a similar credential from another state.

Ellis applied for a position as an assistant high school principal but was not invited to interview. She did not complete an Educators Professional Inventory, which was required for all applicants. None of her recommendation letters specifically recommended her for the position of assistant principal. And she had no recent experience at a comprehensive high school or as a school principal or assistant principal.

4

Ellis applied for and was invited to interview for a position teaching English at a middle school. The process was competitive with 86 applicants and 15 candidates selected for interviews. The candidates were ranked based on qualifications, classroom philosophy, and grading practices. Ellis was not offered the position because she was not found to be the most qualified applicant.

III.

*Ellis Challenges the Layoff*

Ellis filed a complaint with the California Department of Fair Employment and Housing (DFEH) in March 2019, contending that she was laid off and was not offered subsequent positions because she was discriminated against based on her race, sex, and age. Ellis is an African American woman and was 62 years old at the time of her layoff. She also claimed she was retaliated against and discriminated against for engaging in a protected activity related to a disability. The DFEH referred the matter to the U.S. Equal Opportunity Commission (EEOC). The EEOC dismissed the matter stating it could not conclude the information provided established a violation of the relevant federal statutes. It issued a right-to-sue letter on July 11, 2019.

Ellis filed a civil complaint on June 1, 2020. She asserted causes of action under FEHA for harassment, discrimination, and retaliation based on her age, race, and sex/gender. She also asserted a claim for declaratory relief.

She alleged she was wrongfully terminated under a false or pretextual reason of a budgetary problem and was not selected for other positions despite her excellent credentials and work history. She alleged two younger, non-African-American male teachers remained in their positions despite being identified for potential layoff. She further alleged a younger male

5

teacher was kept on "despite engaging in unprofessional conduct" and being "placed on administrative leave." Ellis alleged her age, race, and sex/gender as well as her "complaints about unlawful conduct" were substantial motivating factors in the District's conduct in laying her off and failing to rehire her. She asked for declaratory relief stating the District committed acts of harassment, discrimination, and retaliation as alleged and enjoining the District from engaging in such acts.

## IV.

### *The District's Summary Judgment Motion and Ruling*

The District moved for summary judgment of all causes of action on the basis that (1) Ellis could not state a prima facia case for harassment, discrimination, or retaliation based on any protected class, (2) the District articulated a legitimate, nondiscriminatory, nonretaliatory reason for laying off Ellis, and (3) Ellis could not show that the legitimate, nondiscriminatory, nonretaliatory reasons for the layoff were a pretext for discrimination, harassment, or retaliation.

In support of the motion, the District presented declarations from District and CMI personnel who were involved in the decisions regarding Ellis's employment, including: (1) the District's assistant superintendent for human resources who had personal knowledge of Ellis, her employment with the District, the CMI budget meetings, and the recommendations to the Board; (2) the District's director of human resources who researched and reviewed the District's documents related to two jobs for which Ellis applied; and (3) the current principal of CMI. The District also presented supporting documentary evidence and excerpts of Ellis's deposition testimony.

6

Ellis did not file an opposition to the motion. The trial court issued a tentative ruling to grant the District's motion. No party requested oral argument.

In ruling on the District's motion, the trial court rejected the District's contention that Ellis's complaint was barred by the statute of limitations. It concluded instead that the limitation period was tolled while the EEOC completed its investigation.

The court concluded, however, that Ellis could not state a prima facie case of harassment because she had not identified any instance of harassment apart from being laid off and not rehired. Based on Ellis's own admissions, the court found undisputed evidence that Ellis did not complain about harassment, discrimination, or retaliation before her layoff. Nor did anyone make any derogatory comments about Ellis's age, race, or gender while she was employed at CMI.

As to both the discrimination and retaliation claims, the court cited evidence and undisputed material facts set forth by the District to support its conclusion the District presented substantial evidence that Ellis's layoff was due to budget cuts and seniority considerations rather than race, age, sex or gender. Additionally, the District established Ellis was not rehired because either she did not have the proper credentials, or she was not the most qualified applicant for the positions for which she applied. The court found the District met its burden to establish each adverse employment action was based upon legitimate nondiscriminatory factors. Consequently, the burden shifted to Ellis to establish the reason given was merely a pretext. Because she did not oppose the motion, the court concluded she failed to meet her shifted burden and her claims failed as a matter of law. The court, therefore, granted the motion and entered judgment in favor of the District.

DISCUSSION

## I.

### *Legal Principles*

With few exceptions, FEHA prohibits an employer from discriminating against or harassing an employee based on a protected class such as race, age, and sex or gender. (Gov. Code, § 12940, subds. (a), (j)(1).) It also prohibits an employer from discharging or otherwise discriminating against an employee for opposing practices forbidden under FEHA or for filing a complaint, testifying, or assisting in any proceeding under FEHA; in other words, it forbids retaliation. (*Id.*, subd. (h).)

A defendant may establish entitlement to entry of summary judgment as a matter of law by showing the plaintiff cannot establish one or more elements of each of her causes of action or by establishing a complete defense to the cause(s) of action. (Code Civ. Proc., § 437c, subds. (c), (*o*).) Once the defendant meets that burden, the burden shifts to the plaintiff to show a triable issue of material fact as to the cause(s) of action or defense based on specific facts, not merely allegations made in the pleadings. (*Id.*, subd. (p)(2).)

In the context of a FEHA claim, a defendant may show entitlement to summary judgment if it presents admissible evidence that either the plaintiff cannot establish an element of a prima facie case or that any adverse employment action was based on a legitimate, nondiscriminatory reason. (*Hicks v. KNTV Television, Inc.* (2008) 160 Cal.App.4th 994, 1003 citing *Guz v. Bechtel National, Inc.* (2000) 24 Cal.4th 317, 357 (*Guz*).)

If an employer meets its burden of showing a nondiscriminatory reason for its action, an employee has the burden of establishing with substantial evidence that the stated nondiscriminatory reason for an adverse action was

" 'untrue or pretextual, or evidence the employer acted with a discriminatory animus, or a combination of the two, such that a reasonable trier of fact could conclude the employer engaged in intentional discrimination.' " (*Hicks, supra,* 160 Cal.App.4th at p. 1003.) "If the plaintiff produces *no* evidence from which a reasonable fact finder could infer that the employer's true reason was discriminatory, the employer is entitled to summary judgment." (*Ibid*.)

We review a trial court's order granting summary judgment de novo. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 860.) Even if the superior court's order does not meet all the technical requirements of the summary judgment statute, we independently review the validity of the judgment. (*Goldrich v. Natural Y Surgical Specialties* (1994) 25 Cal.App.4th 772, 782.) The appellant has the burden of showing error by pointing to triable issues of fact supported by citation to the record and supporting authority. (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 455.)

II.

*No Triable Issue of Material Fact as to Discrimination*

Ellis contends the District did not carry its initial burden to negate her discrimination claims. We disagree. To prevail on a discrimination claim, a plaintiff generally must provide evidence that she (1) was a member of a protected class, (2) was qualified for the position she sought or was performing competently in the position she held, (3) suffered an adverse employment action, such as termination, demotion, or denial of an available job, and (4) some other circumstance suggests discriminatory motive. (*Guz, supra*, 24 Cal.4th at p. 355.)

The District presented evidence that Ellis was laid off and was not rehired for another position within the District due to legitimate

9

nondiscriminatory reasons unrelated to her race, age, sex, or gender. When she was offered employment with CMI in 2017, the District was aware of Ellis's race, sex, gender, and age because she previously worked for the District.

The District established CMI needed to eliminate teaching positions for the 2018–2019 school year due to budget constraints. After two teachers voluntarily resigned, it still needed to eliminate one position. Ellis was selected for layoff because elimination of her position, which was recently created, would not directly affect instructional services to students. Ellis was chosen for layoff because another teacher considered for layoff had seniority. These were legitimate nondiscriminatory reasons to eliminate Ellis's position. None of the three positions eliminated, including that of Ellis's, were reinstated.

Contrary to allegations in Ellis's complaint, the District's assistant superintendent averred that no other CMI employees, male or female, were identified for layoff at the same time as Ellis and were allowed to remain in their positions. Nor was there another male employee who was subject to administrative leave whose position Ellis could have filled. A man in his 40s was placed on administrative leave pending an investigation and served a suspension, but he was allowed to return to work in 2018. Even if his position was available, Ellis did not have the credentials required to replace him.

The District also presented evidence that Ellis was not selected for the three positions to which she applied based on legitimate nondiscriminatory reasons. She was not qualified for two of the positions, including the assistant high school principal position. For the third position, as an English teacher at a middle school, Ellis was one of 86 applicants and 15 candidates

10

interviewed. After Ellis was interviewed by a diverse panel, the panel selected a woman of color over the age of 40 for that position based on a competitive ranking process.

Ellis's opening brief does not dispute she was selected for layoff and was not hired for at least two positions based on legitimate nondiscriminatory reasons. The only issue raised in her opening brief is that the trial court did not cite specific evidence establishing that the requirement to complete an Educators Professional Inventory for the assistant principal position "was uniformly applied, was actually disqualifying, and was the true basis for . . . nonelection."

Even if the trial court's order should have cited more specific evidence, our independent review shows the District established, through the declaration of the assistant superintendent, the fact that completion of the Educator's Professional Inventory was a requirement for the assistant principal position and Ellis was not invited to interview because she did not complete the information. Ellis did not oppose summary judgment or dispute this fact with admissible evidence. Moreover, the District also presented undisputed evidence that Ellis's letters of recommendation did not recommend her for a position as an assistant principal and she did not have recent experience at a comprehensive high school or experience as either a principal or assistant principal. Finally, the assistant superintendent declared he did not direct anyone to terminate Ellis, he never told anyone he did not want her working in the district, and he did not engage in discriminatory or retaliatory conduct toward Ellis.

On this record, we conclude there was ample undisputed evidence to establish the District did not hire Ellis for the assistant principal position

11

based on legitimate nondiscriminatory reasons.  Ellis has not met her shifted burden to show a triable issue of fact requiring reversal on appeal.

III.

*No Triable Issue of Material Fact as to Retaliation*

Ellis contends the record shows she engaged in "protected activity" through the administrative charge and right to sue notice from the EEOC, so the District did not foreclose triable issues of fact regarding a retaliatory motive.  We are not persuaded.

To establish a claim for retaliation, a plaintiff must show (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) there is a causal link between the two.  (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1042.)  "If the employer produces a legitimate reason for the adverse employment action, the presumption of retaliation ' " 'drops out of the picture,' " ' and the burden shifts back to the employee to prove intentional retaliation."  (*Id.* at p. 1042.)

Ellis admits she never complained to anyone at CMI about discrimination before her layoff.  Her opening brief cites the complaint filed with the DFEH in March 2019 and the right-to-sue letter issued by the EEOC in July 2019.  However, the undisputed evidence shows Ellis applied for other employment with the District between June and September 2018, *before* she filed her administrative charge.

The District also presented evidence from the CMI principal denying he offered Ellis her former position in September 2018 and then withdrew it as alleged in the complaint.  Rather, he asked if she would be interested in returning if the CMI position became available in the future.  But he did not offer or promise future employment because CMI did not have sufficient funds for the position.

12

Ellis presented no evidence or allegations that any hiring decisions post-dated her administrative claims. The trial court properly determined the District met its burden to establish undisputed legitimate and nonretaliatory reasons for laying off Ellis and for not hiring her for other positions.

V.

*No Triable Issue of Material Fact as to Harassment*

Finally, Ellis concedes the District presented her deposition testimony admitting that no one made derogatory comments about her protected characteristics of age, race, or gender before her layoff and she complained of no such comments. Ellis contends, however, the District did not conclusively defeat her harassment claim. We again disagree.

To prevail on a claim of harassment under FEHA, "an employee must show she was subjected to harassing conduct that was (1) unwelcome; (2) because of [membership in a protected class]; and (3) sufficiently severe or pervasive to alter the conditions of her employment and create an abusive work environment. . . . In addition, she must establish that the offending conduct was imputable to her employer." (*Bailey, supra*, 16 Cal.5th at p. 627 (*Bailey*) [citations omitted].) Harassment can include physical or visual forms of harassment. (*Ibid.*)

Ellis's complaint included no specific allegations of verbal or other forms of harassment. She made a broad claim that the District "maintained, allowed, fomented and permitted a hostile work environment replete with perceived and/or age, race and sex/gender harassment." In support of this allegation, she set forth her claims that her layoff and failure to rehire her constituted harassment as well as discrimination. She also generally alleged that in December 2018, the District "further harassed, retaliated against and

13

discriminated against" her by attempting to "force" her to settle a Worker's Compensation claim "contingent on never applying for a position again" with the District.

Ellis's counsel argued at oral argument that the harassment claim was supported by allegations that an offer of employment was allegedly extended and then withdrawn after consultation with the District's human resources and because an African-American vice principal was excluded from decisions about her employment whereas a Caucasian vice principal was "included in the decision-making process."

The District presented a declaration from the assistant superintendent for human resources averring that he never directed anyone to fire or terminate Ellis for any reason, told anyone he did not want Ellis working for the District, or told anyone to make or rescind any job offers to Ellis after her layoff. He further averred that the African-American assistant principal could not have been aware of any job offer not made to or rescinded from Ellis because it was not part of his duties. He explained the Caucasian assistant principal acted as a liaison in some meetings when the principal was on leave, but he did not make staffing decisions. Rather, the principal was the person responsible for staffing decisions for the 2018-2019 school year. In fact, the Caucasian assistant principal gave Ellis a positive evaluation and actually wrote her a letter of recommendation, which she submitted with her application for a District position.

The District also presented a declaration from CMI's current principal who averred that he asked Ellis if she would be interested in returning if a position opened. But he made clear to her that he was not offering a position because there were insufficient funds. He never offered Ellis a job, never

consulted with human resources about hiring or rehiring her, and never withdrew an offer.

Based on this record, we conclude the District established legitimate nondiscriminatory and nonharassing reasons for Ellis's layoff and the decisions not to rehire her. Beyond Ellis's admission that no one made derogatory and harassing remarks to her, the evidence presented by the District negates Ellis's allegations of general harassment or of a work environment replete with severe or pervasive harassment based on race, age, or sex. Ellis did not meet her shifted burden to establish a triable issue of fact requiring reversal on the issue of harassment based on any protected class.

## VI.

### *No Basis for Declaratory Relief*

Because each of Ellis's causes of action fail as a matter of law, there is no actual or present controversy for upon which to grant declaratory relief. (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80.)

## VII.

### *Sanctions are Denied*

The District seeks $12,616.50 in sanctions against Ellis and her attorney under Code of Civil Procedure section 907 and California Rules of Court, rule 8.276 for bringing a frivolous appeal. The District contends she does not "seriously challenge" the lower court's judgment, in part, because her opening brief is short and she did not file a reply brief. We deny the request.

There is no indication the appeal was prosecuted for an improper motive or that any reasonable attorney would agree the appeal is totally and completely without merit. (*In re Marriage of Flaherty* (1982) 31 Cal.3d 637,

15

650.)  The fact that we disagree with Ellis's contentions does not mean they are "indisputably without merit."  (*Ibid.*)  "Counsel and their clients have a right to present issues that are arguably correct, even if it is extremely unlikely that they will win on appeal."  (*Ibid.*)

DISPOSITION

The judgment is affirmed.  The District shall recover its costs on appeal.  (Cal. Rules of Court, rule 8.278)

DO, J.

WE CONCUR:

McCONNELL, P. J.

O'ROURKE, J.

16